*Lee, C. J., and Gillespie, Jones and Brady, JJ.,* concur.

JONES *v.* INDEX DRILLING COMPANY, INC.

No. 43200          January 18, 1965          170 So. 2d 564

*Stone D. Barefield,* Hattiesburg, for appellant.

*Pack & Ratcliff*, Laurel, for appellee, Index Drilling Company, Inc.

582

*F. B. Collins, Paul D. Swartzfager,* Laurel, for appellee Charles Oree Williams.

KYLE, P. J.

This case is before us on appeal by W. Arlington Jones from a judgment of the Circuit Court of the Second Judicial District of Jones County overruling the appellant's motion for permission to intervene as a party in interest in Cause No. 7226, as shown on the general docket of said court, styled Charles Oree Williams Jr. v. Index Drilling Company, Inc., or in the alternative for an adjudication, before trial, of the appellant's interest in the plaintiff's claim against Index Drilling Company for damages for personal injuries alleged to have been sustained by the plaintiff as a result of the negligence of one of Index Drilling Company's truck drivers in the unloading of two metal pipe racks and other oil well equipment.

The record shows that the plaintiff Charles Oree Williams Jr. was 18 years of age and an employee of Production Service, Inc., at the time of his injury on September 8, 1956. He was paid workmen's compensation benefits for his injury by his employer's insurance carrier, Maryland Casualty Company, under the Mississippi Workmen's Compensation Act, until sometime during the year 1957, when such payments were discontinued. On October 31, 1958, he went to the law office of the appellant, Arlington Jones, a member of the Bar of the City of Hattiesburg, for legal advice. Williams asked Jones whether he was not entitled to more compensation. Jones told Williams that he would have to look into the matter, and at that time Williams signed a paper entitled "Contract for Legal Services", in which he assigned to Jones, as attorney, "an undivided one-

fourth interest in said claim and also in and to all sum, or sums, received therefrom (one-third if the case is appealed).'' Several months passed after the signing of that instrument, during which time no additional compensation was paid to Williams, and finally, sometime during the month of August 1959, Williams consulted F. B. Collins, a Laurel attorney, who told Williams that he would not interfere in the compensation matter because he had already employed an attorney to handle that, but he would take Williams' third party suit against Index Drilling Company.

The record that we have before us shows that Judge Collins and his associate filed two suits on behalf of Williams, as plaintiff, against Index Drilling Company, as defendant, for the recovery of damages for the injuries suffered by the plaintiff on September 8, 1956, as a result of the negligence of the defendant's truck driver in the operation of the defendant's truck and crane.

The first suit was filed on August 20, 1959. The cause was docketed in the Circuit Court as Cause No. 7139. The defendant Index filed its answer to the plaintiff's declaration on October 22, 1959. On November 3, 1959, the appellant Jones filed in the cause an instrument entitled ''An Intervening Petition'', which recited that it was filed ''for the purpose of giving all parties notice * * * of the assigned instrument which W. Arlington Jones has in connection with the above claim.'' In his petition Jones stated that Williams had executed an assignment to him of a present and vested interest in his claim for personal injuries against any and all parties to the extent and to the amount shown by the copy of said assignment which was attached to the petition and made a part thereof; that the assignment was executed by Williams after he had reached the age of 21 years; and that Jones was entitled to be paid out of the proceeds from any recovery or settle-

ment the sum as shown. Attached to the petition was a copy of the above mentioned contract for legal services.

On November 3, 1959, the appellant Jones also filed in the name of Williams, as plaintiff, against the defendant Index a declaration in Cause No. 7166 alleging the same cause of action as that stated in Cause. No. 7139. On November 16, 1959, the attorneys for Index filed a motion to consolidate the two cases, for the reason that the parties litigant in both cases were the same, and the alleged cause of action in both cases was the same, and a judgment in one would be res judicata of the other. On November 19, 1959, the plaintiff Williams filed a motion signed and sworn to by himself to nonsuit or dismiss the suit filed for him by Attorney Jones and docketed as Cause No. 7166.

In his motion to dismiss without prejudice the suit filed by Jones, as attorney, in Cause No. 7166, the plaintiff alleged that on October 31, 1958, he employed Mr. Jones to represent him in his claim for workmen's compensation against Production Service, Incorporated, or Martin's Connection Work and Welding Shop, and that claim only; that plaintiff was injured while working for Production Service, Incorporated, on September 8, 1956, and for several months thereafter Martin's Connection Work and Welding Shop and the Maryland Casualty Company paid workmen's compensation to him in the approximate amount of $2,000; that sometime during the year 1957 Martin's Connection Work and Welding Shop and Maryland Casualty Company, its insurance carrier, ceased and refused to pay to the plaintiff any further workmen's compensation, and on October 31, 1958, plaintiff employed Mr. Jones to represent him in his claim for further compensation. The plaintiff further alleged that after three or four months had passed and he had heard nothing further from Mr. Jones, he went to Mr. Jones' office and inquired as to what action he had taken in the case, and he was then and there in-

formed by Mr. Jones that he had written to Martin's Connection Work and Welding Shop and Maryland Casualty Company, but he had been unable to collect from them. The plaintiff further stated in his motion that a month or two later he went back to see Mr. Jones, and he was then informed by Mr. Jones that, in his opinion, he had gotten all out of the claim that he would ever get, due to the fact that he had gone back to work. Plaintiff further stated in his motion that he then inquired of Mr. Jones if he could collect out of anyone else on account of his injuries, because at that time he was in necessitous circumstances and needed medical care, food and clothing; whereupon plaintiff was informed by Mr. Jones that he had no claim against anyone else on account of the injury complained of, and that he had gotten all that he would ever get out of the claim. The plaintiff stated that he went to see Mr. Jones still another time and was again informed that he had gotten all that he would ever get out of his claim.

The plaintiff further stated in his motion that, after being thus informed by Mr. Jones, he sought the advice of F. B. Collins, of Laurel, Mississippi; that he informed Mr. Collins of the facts in the case, and further informed Mr. Collins that he had not employed Mr. Jones to represent him in any other claim except the claim for workmen's compensation; that Mr. Collins upon being so informed agreed to represent him in his claim against Index Drilling Company, Incorporated, in a third party action, and he thereupon signed a contract with Mr. Collins to represent him in such third party action. The plaintiff further stated in his motion that, notwithstanding the fact that he had been informed by Mr. Jones that he had no claim against any one else, and notwithstanding the fact that Mr. Jones had taken no action on his claim for workmen's compensation up to August 20, 1959, three days after process was served upon Index Drilling

Company, plaintiff was informed by Mr. Jones that he could settle his workmen's compensation claim for him for approximately $2,000, and Mr. Jones presented to him a form release wherein he was to release any and all claims against Martin's Connection Work and Welding Shop, Dapsco, Inc., Index Drilling Company, Inc., and others, for the sum of $2,000; but plaintiff refused to sign the same after having been advised by counsel as to his rights.

On the basis of the facts stated above, the plaintiff stated that Mr. Jones had no right or authority to file the suit in Cause No. 7166 and had no interest therein, and the plaintiff moved that the court nonsuit or dismiss the suit without prejudice.

On January 11, 1960, the attorneys for the defendant Index filed a motion for leave to amend its answer in Cause No. 7139, and an order was entered sustaining the motion. On January 14, 1960, the plaintiff filed an answer to the affirmative defenses set up in the defendant's amended answer. On January 15, 1960, an order was entered in Cause No. 7139 sustaining the motion of the plaintiff for permission to take a nonsuit in said cause without prejudice.

On March 21, 1960, an order was entered sustaining the motion of the plaintiff for a voluntary nonsuit in Cause No. 7166. The order recited that the court had heard the testimony of the defendant and had found that the motion for nonsuit was well taken and should be sustained.

A new declaration was filed by the plaintiff's attorneys, F. B. Collins and Paul G. Swartzfager on April 25, 1960. The case was docketed as Cause No. 7226. The parties named in the declaration were the same as the parties named in the declaration filed in Cause No. 7139, and the negligence charged against the defendant Index was substantially the same as the negligence charged in Cause No. 7139. That case was tried at the January

1961 term of the court, and a judgment was entered on a jury verdict in favor of the plaintiff for the sum of $63,500. The defendant's motion for a new trial was overruled, and immediately thereafter an appeal was taken by the defendant to this Court. On February 5, 1962, this Court reversed the judgment of the lower court and remanded the case for a new trial on the question of damages only. See Index Drilling Co. v. Williams, 242 Miss. 774, 137 So. 2d 525 (1962).

On May 15, 1962, Jones filed a motion in Cause No. 7226 for permission to intervene as a party in interest in said cause, or in the alternative for an adjudication by the court before trial of the movant's assigned interest in the plaintiff's cause of action, on the ground that the plaintiff had executed to him an assignment of an undivided 25 percent interest in his claim for damages as a result of personal injuries received by him and described in the plaintiff's declaration. In his motion Jones alleged that, by virtue of Mississippi Code Annotated section 1448 (1956), he was entitled as a matter of right to intervene and to be protected in his interest by any judgment entered in the cause. Attached to the motion as an exhibit thereto was a copy of the contract for legal services to be rendered by Jones dated October 31, 1958, and signed by the plaintiff Williams.

It appears from the record that the case was set for hearing on Jones' motion to intervene, or in the alternative for an adjudication by the court of his assigned interest in the plaintiff's cause of action, on September 6, 1962, being a day of the regular August 1962 term of the court, and on that day testimony was taken on the motion.

Upon being called to testify as a witness in his own behalf Jones identified the written "Contract for Legal Services" dated October 31, 1958, and signed by the plaintiff Williams. The contract was introduced in evi-

dence and had been made a part of the record on this appeal. It appears as a typewritten instrument, except as to two and one-half lines which were underscored and filled in with pen and ink and except as to date. The contract is as follows:

### "CONTRACT FOR LEGAL SERVICES

"For and in consideration of legal services rendered in mybehalf in the prosecution of my claim against Index Drilling Co., Dapsco Inc., Martin Connection Works & Maryland Casualty Co. or any other person, firm or corporation I hereby assign and set over to W. Arlington Jones, Attorney, an undivided one-fourth interest in said claim and also in and to all sum, or sums, received therefrom. (one-third if case is appealed).

"I hereby authorize the above attorney, W. Arlington Jones, to prosecute this claim in my name, and I hereby ratify his actions in all things pertaining thereto.

"Witness my signature on this the 31st day of Oct., 1958.

/s/ Charles O. Williams
Rt. 1 Soso"

Jones testified that after the signing of the above mentioned contract he represented Williams in his claim for compensation for injuries received by him as a result of the accident referred to in the plaintiff's declaration. Jones was then asked whether he was presently employed by Williams. His answer was "No." He then identified and introduced in evidence a letter which he had received from Williams, postmarked October 17, 1959. The letter signed by Williams appears in the record, and is as follows:

"Dear Mr. Jones:

This is to advise you that now that the Workmen's Compensation case against Martin Connection Works

and Welding Shop that you handled for me has now been settled and you have been paid your fee in full and have been paid for your services in full, and I will not be in need of any further services from you. I am writing this letter to you in order that you will know that our relationship as attorney and client terminated as of the date of the settlement of the suit as mentioned above, and that I no longer retain you as my attorney in any wise.

Yours truly,

Charles Williams''

Jones stated that he did not claim to represent Williams at the time of the hearing, that he had been discharged and he understood that Williams had employed Judge Burkitt Collins to represent him. Jones stated that he had given notice to Index Drilling Company of the assignment which he held of a 25 percent interest in Williams' claim, that he had also given notice to the other corporations mentioned and the Maryland Casualty Company of his interest in the claim. Jones stated that he had filed a suit for Williams against Index in Cause No. 7166, in which Williams had taken a nonsuit without prejudice. A copy of the final judgment in that case, dated March 21, 1960, dismissing the cause without prejudice, was introduced in evidence.

The plaintiff's attorneys did not cross-examine Jones, but introduced as evidence the motion for dismissal or nonsuit filed by the plaintiff in Cause No. 7166, upon which the above mentioned judgment was based, and with that the plaintiff rested.

At the conclusion of the hearing the trial judge denied Jones' motion for leave to intervene, or in the alternative for an adjudication of Jones' interest in the plaintiff's cause of action against Index. The trial judge stated his reasons therefor as follows:

It is the recollection of the court that there was some testimony taken (in Cause Number 7166) and the court sustained the motion to dismiss. Anyhow, it is the court's opinion that the judgment on the motion to dismiss and necessarily adjudicates it. In addition to that, the pleadings themselves show that on September 8, 1956 * * * the plaintiff was 18 years old * * *. At any rate whether he was 18 or whether he was 17, that would have made him 20 on October 31, 1958 * * *. On those facts the court is of the opinion that the decision in 7166 is res judicata of the question of whether or not a valid contract existed at the time the motion to dismiss was made. But if the court is wrong in that, then the court is of the opinion, since he was a minor at the time of signing the contract, and there is no order showing any chancery court proceeding authorizing his signature, then he had a right to revoke it, which the evidence now shows he did. So I will deny the motion to intervene or adjudicate attorney's fees. The contract was revoked October 17, 1959. That would terminate any interest of Mr. Jones in the case.''

It appears from the record that several days after the hearing of September 6, 1962, the court reporter found from an examination of his notes of the previous proceedings that, at the time the court ruled on the motion for nonsuit in Cause No. 7166, the court excepted from its ruling any determination as to the rights of Jones under the contract which constituted the basis of his claim to an interest in the plaintiff's cause of action against Index Drilling Company. It further appears from the record that the trial judge, having satisfied himself that Jones' rights under his contract for legal services had not been determined in the judgment of nonsuit entered in Cause No. 7166, immediately contacted by telephone the attorneys of the respective parties and advised them that the court in rendering its opinion on September 6 had erroneously assumed that

testimony had been taken during the hearing on the motion for nonsuit in Cause No. 7166, and the issue as to Jones' rights under his contract had been adjudicated by the judgment of nonsuit entered in that case, and that the court felt that it had misled both sides in its conduct of the hearing on September 6 and in its ruling at the close of the hearing on Jones' motion for leave to intervene. The trial judge therefore advised the attorneys for both sides that the case would be reopened for a rehearing on Jones' motion and an opportunity would be given to both parties to present their case in its entirety. Notice of the intention of the trial judge to order a rehearing on Jones' motion and the time for its rehearing was given to the attorneys of the respective parties by letter on September 13.

On September 13 the court entered an order upon its minutes setting aside its findings of September 6 on Jones' motion for leave to intervene. The order stated that a rehearing on the motion would be held at nine o'clock A.M. Saturday, September 15, 1962. The order also stated that the opinion rendered on September 6 was based on an erroneous assumption that the court had theretofore, by its decision on plaintiff's motion to nonsuit in Cause No. 7166, determined the question of attorney's fees and the interest of Jones in the case, and that the order of nonsuit in that case was res judicata on the issue as to Jones' right to intervene in Cause No. 7226; and for that reason no judgment had been entered pursuant to the court's findings of that date. On September 13 the plaintiff Williams filed a motion to set aside the order entered on September 6 on the motion of Jones for leave to intervene, and also filed a plea in abatement and motion to strike the motion of Jones for leave to intervene in the cause.

When the case was called for a rehearing on Jones' motion to intervene on Saturday, September 15, 1962, as provided in the order of the court entered on Sep-

tember 13, Jones was called but did not appear. His attorney, however, appeared for him and requested that he be allowed to make a statement to the court. The attorney stated that he first received notice of the time and place for the rehearing by letter dated September 13, 1962, which he actually received at his office on September 14; that he was appearing before the court at the time stated for the purpose of objecting to a rehearing or the introduction of any testimony on Jones' motion to intervene; that a hearing had been had on the motion on September 6, that none of the parties to the proceeding had requested a rehearing on the motion, and the court had no authority to do anything more than enter an order based upon the hearing of that date; that neither the movant nor his attorney had received sufficient lawful notice of the rehearing, and Jones was out of the state.

The court, in answer to the statement made by Jones' attorney, dictated into the record a statement of the notice which he had given to the attorneys for the respective parties of his determination to set aside the decision rendered on September 6, and his effort to set the case for rehearing at a time during the present term which would be satisfactory to all of the parties. The court stated that since Mr. Jones did not consent to any rehearing in any event the court had no alternative but to proceed with the hearing, and the objection of the appellant's attorney to the rehearing was overruled. The appellant's attorney then requested that he be excused and retired from the courtroom. The court then proceeded with the hearing.

The plaintiff's attorney had the clerk identify and introduced in evidence the files in causes numbered 7139 and 7166, and also the docket entries in Cause No. 7139. The plaintiff Williams was then called to testify as a witness in his own behalf.

Williams testified that he had been paid workmen's compensation after his injury, but payments had been stopped during the year 1957; and after waiting several months he went to see Mr. Jones and asked him about his workmen's compensation claim. He asked Mr. Jones, "Wasn't I entitled to some more workmen's compensation?" Mr. Jones told him he would have to look into the matter. Mr. Jones then handed him a sheet of paper that had two blank lines. Williams asked Mr. Jones what the paper was, and Mr. Jones said, "This is to give me authority to look into your medical reports * * * I cannot look into them without your permission." Williams was asked to examine the contract dated October 31, 1958, which he had signed and which Jones had offered in evidence during the hearing on September 6. Williams stated, "That is the contract with the exception of the pencil writing was not in there." Williams was asked to read that part of the instrument which he said was not in the instrument when he signed it. He then read the two and one-half lines of the contract which were filled in with a pen or a pencil. He stated that the two words "one-half", which appeared in the typewritten form, were blocked out and the words "one-fourth" were inserted in their place at the time he signed it. Williams was asked when that part of the instrument that was left blank, which was later written in by pencil, "When was that done?" His answer was, "It was done after I had left or sometime, because it was not in there when I signed the contract." Williams stated that about three or four months later he went back to see Mr. Jones, that his father went with him, and he asked Mr. Jones if anything had been done about his workmen's compensation. Mr. Jones advised him at that time that he had been paid and he could not receive anything else. Williams stated that he went back to see Mr. Jones again about two months later, and Mr. Jones again advised him that he did not have any-

thing except workmen's compensation. Williams stated that his foot was hurting him and he went back to Mr. Jones' office a third time to see if he was not entitled to some more medical care, and Mr. Jones again told him that he had been paid all that he could be paid; that he then asked Mr. Jones, "Wasn't there any person or corporation that would be responsible for his accident other than Production Service?" And Mr. Jones told him, "No Sir."

Williams stated that he then went to see Judge Burkitt Collins; that he told Mr. Collins that he had given a contract to Mr. Jones for his workmen's compensation, and Mr. Collins would not advise him as to that; that Collins told him that he would not interfere with another lawyer's contract, but if he had not given his Index Drilling case to anyone he would take that. Williams stated that a few days after he had turned the matter over to Judge Collins he received word from Mr. Jones that he could settle his workmen's compensation claim for about $2000. That was after Judge Collins had filed suit against Index Drilling Company.

At the conclusion of the hearing the court found that Jones had a contract with the plaintiff Williams to represent him in a workmen's compensation case, but the contract covered only the matter of workmen's compensation and had no relation to a third party suit; that Jones had no contract with Williams to represent him in a third party suit against Index Drilling Company for damages arising out of the injury for which he had received workmen's compensation. It was therefore ordered that Jones' motion for leave to intervene as a party plaintiff in the pending suit be denied. A final judgment was then entered pursuant to an agreement for a settlement of the case which had been arrived at by the attorneys for the respective parties, whereby it was ordered and adjudged that the plaintiff Williams have and recover of and from the defendant Index

the sum of $27,500 and all costs, that the intervention claim of Maryland Casualty Company for reimbursement of workmen's compensation paid to Williams out of the amount of Williams' recovery from Index be dismissed with prejudice, and that the above mentioned sum of $27,500 be paid into the registry of the court to be disbursed according to further order of the court.

Payment of the agreed sum of $27,500 was duly made into the registry of the court. On September 24, 1962, appellant Jones filed notice of appeal and a bond for appeal without supersedeas.

The appellant's attorney has assigned and argued four points as ground for reversal of the judgment of the lower court. It is first argued that the court erred in entering an order on its own motion setting for a new hearing the motion of the appellant for leave to intervene as a party plaintiff in the suit, or in the alternative to adjudicate the assigned interest of appellant in the plaintiff's cause of action against Index Drilling Company. But we think there is no merit in that contention. It is well settled that a court of general jurisdiction has the inherent right at any time during the term and on its own motion to open, set aside, vacate, or otherwise modify its own orders or judgments. 66 C.J.S., *New Trial* section 115 (1950); Mutual Health & Benefit Ass'n. v. Cranford, 173 Miss. 152, 156 So. 876 (1934); Shirley v. Conway, 44 Miss. 434 (1870); McRaven v. McGuire, 9 Smedes & M. 34 (Miss. 1847).

In the case of Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797 (1882), we find this apt statement: "It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court."

██ █ It is argued, however, that the court should have given notice of its intended action to the parties affected by such motion and its resulting order. But the record in this case shows that the attorneys for both the appellant and the appellees were given notice of the court's intended action by telephone calls on September 12, and that the attorneys were given notice by letter of the order entered on the minutes of the court on September 13 providing for such rehearing at 9 o'clock A.M. on Saturday, September 15, and ample time was allowed for the parties and their attorneys to appear at the hearing to be held on that date, same being the last day of the present term of the court.

██ █ It is next argued that the court erred in permitting the plaintiff Williams to testify on the rehearing as to the facts and circumstances surrounding the execution of the contract for legal services and the changes made in the written instrument after it was signed by Williams. But we think there was no error in the courts admitting the testimony of Williams relating to the interview he had with Jones which led to the signing of the instrument and the fact that the blank spaces had not been filled in when the instrument was signed.

In 4 Am. Jur. 2d, *Alteration of Instruments* section 86 (1962), it is said: "There would seem to be no question as to the admissibility of parole evidence to show an unauthorized alteration of a written instrument, the object of such evidence being not to vary the terms of the instrument, but on the contrary to prove the terms thereof as originally executed."

Williams' testimony that the two and one-half lines of blank spaces in the typewritten instrument had not been filled in when he signed the instrument, that the words "one-half" were stricken out and the words "one-fourth" inserted in place of the words "one-half" before he signed the instrument, and that Jones said that the paper which he was requested to sign was needed to

give him authority to look into Williams' medical reports, that he could not look into them without Williams' permission, shed light upon the meaning of the words "my claim" as used in the instrument which Jones prepared and which Williams signed. That testimony was uncontradicted, and in our opinion, lends support to Williams' contention that his employment of Jones as an attorney was limited to the prosecution of his claim for additional workmen's compensation only. Williams' testimony followed closely the sworn statements made by him on November 19, 1959, in his motion to dismiss the suit filed by Jones in Cause No. 7166, which had been introduced in evidence during the hearing on September 6, 1962.

It is next argued on behalf of the appellant that the court erred in not sustaining the motion of the appellant filed on May 15, 1962, for leave to intervene as a party plaintiff in the suit against Index Drilling Company, or in the alternative for an adjudication of the appellant's assigned interest in the suit.

██ ██ But we think it cannot be said that the trial judge erred in his finding that the appellant's contract with Williams was a contract to represent him in his claim for workmen's compensation benefits only, and that the appellant had no contract with Williams to represent him in the third party suit against Index Drilling Company. In our opinion there is ample evidence in the record to support the trial judge's findings on that issue, ██ ██ and it is well settled by the decisions of this Court that the findings and conclusions of the trial judge on issues of fact will not be disturbed by this Court on appeal unless they are manifestly wrong. Hall v. State, 247 Miss. 896, 157 So. 2d 781 (1963); United States Fidelity & Guaranty Co. v. State, for use of Ward, 211 Miss. 864, 53 So. 2d 11 (1951); Kimbrough v. Smith, 201 Miss. 202, 28 So. 2d 850 (1946); Ellis v. Pellegrini, Inc., 163 Miss. 385, 141 So. 273 (1932).

Finally it is argued that the court erred in not awarding the appellant a judgment for an amount equal to his 25 percent assigned interest in the judgment rendered in favor of the plaintiff against Index Drilling Company on September 15, 1962. That contention has been answered fully by the trial judge's finding that Jones' contract to represent Williams did not include Williams' right of action in a third party suit against Index Drilling Company.

For the reasons stated above the judgments appealed from are hereby affirmed.

After the filing of the record in this Court the appellee Index Drilling Company filed a plea in bar of the appeal, in which it was alleged that the appellant was estopped to assert or prosecute his claim against the appellee for reasons stated in the plea in bar.

Since the appeal has been considered by us on its merits, the plea in bar has become moot and is hereby dismissed.

Affirmed.

*Ethridge, Gillespie, Rodgers and Patterson, JJ.,* concur.