724 So.2d 922 (1998)
Richard Kent WHITTINGTON, Appellant,
v.
Tina M. WHITTINGTON, Appellee.
No. 97-CA-01470 COA.
Court of Appeals of Mississippi.
November 24, 1998.
*923 Earl P. Jordan, Jr., Meridian, Attorney for Appellant.
William B. Jacob, Joseph A. Kieronski, Jr., Daniel P. Self, Jr., Meridian, Attorneys for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Tina Whittington filed her complaint for divorce on September 15, 1995. On that same date a motion for temporary relief was filed by Tina. On September 21, 1995, Kent Whittington filed a counter-motion for temporary relief against Tina. Kent also filed a counter-complaint for divorce that same day.
¶ 2. On October 3, 1995, the parties entered into an agreed temporary order. Thereafter, on October 24, 1995, a hearing was held on the motions for temporary relief. Later, on April 18, 1997, a consent for divorce was executed by the parties.
¶ 3. A trial was held in this cause on June 23, July 2, and July 30, 1997. From the chancellor's decree and opinion, Tina was granted the permanent care, custody, and control of the minor child Kristina.
¶ 4. Kent filed a motion for a new trial and a motion for reconsideration on August 25, 1997. On October 22, 1997, a judgment was rendered overruling and denying both motions. Feeling aggrieved, Kent filed his notice of appeal on November 20, 1997.
¶ 5. Having read the record and studied the law, we affirm the chancellor's decree below.

FACTS
¶ 6. Kent and Tina Whittington were married on December 1, 1990. The couple separated on September 11, 1995. From that marriage, the couple produced one child, Kristina.

*924 STANDARD OF REVIEW
¶ 7. Our standard of review is well known. The scope of review in domestic relations matters is limited by the substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990).
This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). See also Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994); Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986). This is particularly true in the areas of divorce, alimony and child support. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The word "manifest", as defined in this context, means "unmistakable, clear, plain, or indisputable." Black's Law Dictionary 963 (6th ed.1990).
Magee v. Magee, 661 So.2d 1117, 1122 (Miss. 1995).
¶ 8. This fact is as true of ultimate facts as of evidentiary facts. Spain v. Holland, 483 So.2d 318, 320 (Miss.1986). In other words, this Court will generally affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court be manifestly wrong. Brown v. Williams, et al., 504 So.2d 1188, 1192 (Miss.1987). This Court must examine the entire record and accept:
that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact....
Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 9. Finally, the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses. Hall v. State ex rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963). Thus, this Court must examine assignments of error presented in light of the aforementioned principles.
ISSUES PRESENTED
I. WHETHER THE RECORD EVIDENCE SHOWS THE CHANCELLOR MANIFESTLY ERRED BY FAILING TO EQUALLY CONSIDER ALL THE ALBRIGHT FACTORS WHEN SHE CONCLUDED THAT THE BEST INTERESTS OF THE FIVE AND ONE HALF YEAR OLD DAUGHTER WOULD BE SERVED BY PARAMOUNT CUSTODY WITH THE MOTHER, THOUGH A PSYCHOLOGIST TESTIFIED THE FATHER WAS EXEMPLARY, BECAUSE THE FATHER HELD AND EXPRESSED EMPHATICALLY THE BELIEF THAT THE MOTHER CONTRIBUTED NOTHING TO THE WELL-BEING OF THE CHILD, SPOKE DESPAIRINGLY OF THE MOTHER IN FRONT OF THE CHILD AND WAS "OVER-PROTECTIVE" OF THE DAUGHTER.
II. WHETHER THE BEST INTEREST OF A CHILD, WHOM EXPERT TESTIMONY REVEALS HAS ADJUSTED WELL TO A TWO-YEAR PERIOD OF TEMPORARY JOINT CUSTODY, IS IGNORED AND THE CHANCELLOR IS MANIFESTLY WRONG IN NOT MAKING THE JOINT CUSTODY PERMANENT, BECAUSE THE PARENTS HAVE HAD DISAGREEMENTS OVER HOW THE CHILD SHOULD BE CARED FOR.
¶ 10. We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The age of the child should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which parent has the best parenting skills, and which parent has the willingness *925 and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of the parents; the school, home, and community record of the child; the preference of the child at the age sufficient to express a preference by law, stability of the household environment and employment of each parent, and other factors relevant to the parent-child relationship. Pellegrin v. Pellegrin, 478 So.2d 306, 307-08 (Miss.1985).
¶ 11. Our review of the chancellor's decree and the trial transcripts leads us to believe that the chancellor considered the Albright factors in making her determination, rather than justifying her decision on only one factor as argued by Kent. As reflected in the chancellor's opinion and judgment, the chancellor analyzed the Albright factors. The chancellor noted the ages of Kent and Tina, the education of the parties pointing out that Tina's educational background was undevelopedthe sex and age of the child, the capacity of Kent and Tina for parenting and their respective ability to provide primary care for Kristina, who gave primary care to Kristina prior to the couple's separation, the employment of the parents, the moral fitness of the parents, as well as other factors found to be in the best interest of the child such as: sharing of responsibility in raising the child, the cleanliness of the house, obsessive and overprotective behavior displayed by Kent, the smoking issuethe chancellor noted that Tina should quit, the relationship between the parents and their child, and the cooperative relationship between Tina and Kent in relation with nurturing the child.
¶ 12. From our review of the situation, the chancellor reviewed factors necessary to completely examine the situation and after doing so placed Kristina with her mother. Given that the chancellor was not manifestly in error, we find these citations of error to be without merit.

CONCLUSION
¶ 13. Central to this case was the issue of custody. The chancellor reviewed the parties' respective positions, ultimately choosing Tina as the parent to receive custody of Kristina. Having read the trial transcripts and the chancellor's judgment and opinion, we find that the evidence warrants the chancellor's decision.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR.